In re C. H. Lewers, Pakalo Chow, and C. C. Harris, Minister of Finance.

## SUPREME COURT—IN BANCO.

*Allen, Ch. J., Robertson and Davis, J. J.*

IN RE CHRISTOPHER H. LEWERS, PAKALO CHOW, AND CHAS.
C. HARRIS, MINISTER OF FINANCE.

"PERSONS coming here from China under contracts for labor made
there," personally subject to the taxes of this Kingdom.

Opinion by ALLEN, Ch. J.

This case is a submission to the Court in accordance with
the Civil Code.

It appears by an agreed statement of facts that Pakalo
Chow, on the 10th of August, 1865, at Hongkong, China,
entered into a contract of labor with Wm. Hillebrand, M.
D., Royal Commissioner of Immigration, and in behalf of
the Hawaiian Government, for the term of five years, for
certain stipulated wages, and for other considerations set
forth in the contract.

At the time the contract was made, nothing was said to
him relative to the payment of any taxes.

It further appears that the contract was duly assigned to
Christopher H. Lewers on the arrival of Pakalo Chow in
this kingdom.

It further appears that L. Aholo, tax-collector for Wailuku
District, Island of Maui, has demanded of Pakalo Chow the
sum of five dollars for taxes lawfully assessed against him.
Pakalo Chow avers that he is not liable, and if the taxes of
right should be paid, the same should be paid by the said
Christopher H. Lewers, for the reason that at the time of
entering into the contract he was entirely ignorant of the
laws of this kingdom.

The said Lewers avers that he is not liable for the taxes

assessed against Pakalo Chow, because no stipulation for the payment is made in the contract or in the assignment of the same, and that nothing was said about it at the time of the assignment; and he further avers that inasmuch as the contract was made by Pakalo Chow with one branch of His Majesty's Government and assigned to him by the same without any agreement or understanding touching taxes, they cannot be lawfully demanded either from himself or Pakalo Chow.

The first question which is suggested by this agreed statement of facts is this: Is this contract to be interpreted according to the laws of the country where it was made, or by the laws of the country where it is to be executed? In Prentiss vs. Savage, 13 Mass., 23, Mr. Chief Justice Parker said: "It seems to be an undisputed doctrine with respect to personal contracts, that the law of the place where they are made shall govern in their construction, except when made with a view to performance in some other country, and then the law of such country is to prevail. This is nothing more than common sense and sound justice, adopting the probable intent of the parties as to the rule of construction."

In the case of Chapman vs. Robinson, [6 Paige, pp. 627-630] Chancellor Walworth said: "It is an established principle that the construction and validity of personal contracts which are purely personal, depend upon the laws of the place where the contract is made, unless it was made with reference to the laws of the place or country where such contract, in the contemplation of the parties thereto, was to be carried into effect and performed."

Mr. Justice Story, in his valuable Commentaries on the conflict of laws, says that "the contract, as to its validity, nature, obligation and interpretation, is to be governed by the law of the place of performance. This would. seem to be a result of natural justice, and the Roman law has adopted it as a maxim."

In the case of Andrews *vs.* Pond, [13 Peters' Rep. 15] this rule was fully recognized. The Court says that "the general principle in regard to contracts made in one place to be executed in another, was well settled, that they are to be governed by the laws of the place of performance."

"This rule," Mr. Justice Story says, "has the general consent of foreign jurists." The same rule has been adopted in the United States, as appears by the authorities referred to. Lord Mansfield says that "the law of the place can never be the rule when the transaction was entered into with an express view to the law of another country as the rule by which it is to be governed." [2 Burr, 1077, 1078].

This therefore may be regarded as the governing rule in all cases of personal contracts, except as to the formalities, and solemnities, and modes of execution. In these particulars the law of the place where the contract was made must be regarded.

In the contract which is the basis of this submission there is no express stipulation of exemption from taxes, and if there was, it would be invalid. By the Civil Code every male inhabitant of the Kingdom, whether a Hawaiian subject or an alien, is liable to certain personal taxes, unless specially exempted by law.

In making the contract in China, to be executed here, the agent of the Board of Immigration had no more authority to stipulate for the exemption of taxes than he would have for making contracts with laborers here. And it will not be contended that any Government agent has any authority under the law to make exemption of taxes a part of the consideration for a contract of labor or anything else. It is against the whole theory and laws of taxation, as has been ably illustrated by the Attorney General. It is sufficient to say, that the law of the kingdom recognizes no such principle or authority. It will not be contended that the Minister of Interior in making contracts for labor for the

public works could make an exemption of taxes as a part of the consideration. Suppose Government sends abroad for an Attorney General, or an Engineer, Military Instructor, or School Teacher, and makes the contract for service here, will it be seriously contended that they are exempted from taxes and other duties which the law imposes upon Hawaiian subjects and aliens. No illustration can add to the force of a simple statement of the case.

The counsel for Pakalo Chow wishes us to regard this as an exceptional case, and that there should be a distinction in the adjudication of contracts made by the Government and individuals. The law, very wisely, does not recognize any such distinction. It would be oppressive to give by law advantages to the Government over individuals in contracts made by them, and it would not be in accordance with a sound common sense for courts to vary the law to apply to particular cases in defiance of its general principles. There is as much equity that a promisor of a note should pay it the day after the Statute of limitations is a bar to its collection, as the day before; but still courts would not deem it a sound administration of the law to exercise equity powers to give to a party rights which the law had declared forfeited by laches. The only distinction between Government and individuals in contracts is simply this: they are usually more able to protect persons with whom they contract, from loss, than individuals. But when the parties appear in court, they are on the same platform. It is the law and the testimony which must govern, and not the power and influence, or weakness of a party to the suit.

But it is contended by the counsel for Pakalo Chow that as the agent who contracted with him did not make known to him that he would be subject to the laws of taxation in this kingdom, he therefore should be exonerated. The Chinaman was either capable or incapable of being a party to this contract. If capable, and it is not contended that he is in-

In re C. H. Lewers, Pakalo Chow, and C. C. Harris, Minister of Finance.

capable, the same law must be applied to this contract as to commercial and all other personal contracts. Suppose, for example, a promissory note is made in China, payable with interest in six months at this place. Our laws fix the rate of interest to be paid, and it would not be regarded as a defence that the laws on that subject operative here were not made known to the maker of the note, or that he was ignorant of the general rule that interest is due according to the law of the place where the contract is to be performed. Thus a note made in Canada, where the rate is six per cent., payable with interest in England, where it is five per cent., bears the English interest. [Scofield vs. Day, 20 Johnson R. 120]. So of the days of grace, which differ in different countries, extending from three to eleven days. [Bayley on Bills, 234,235. Chitty on Bills, 193,407]. The usage of the place at which a bill is drawn and where payment of a note or bill is to be made, governs as to the number of the days of grace. By the force of international law these general rules must be observed.

How far there are equities in this case it is not for the Court to judge. Our province is limited to the legal interpretation of the contract, as there is no pretense that the agent of the Board of Immigration was guilty of misrepresentation in making it.

The counsel refers to the Civil Code, and urges the Court to exercise its equity powers in this case; but we are of opinion that this provision does not apply to cases of contracts of this character, more especially as the contract was made by a co-ordinate branch of the Government, the appeal may properly be made to it. The counsel can safely rely upon the accuracy of the statements which the agent of the Board of Immigration may make, for he is an upright and intelligent man, as well as on the liberal justice with which the case of his client would be regarded. This is not a case for the interposition of chancery powers by the Court.

The next question which arises in this case is, as to the liability of the assignee of the contract to pay the taxes of Pakalo Chow. By the assignment of the contract he has all the rights of the assignor, and he has incurred all his liabilities and obligations, and no more and no less; and as the assignor had incurred no liability to remit the taxes, the assignee has incurred none to pay them. The assignor by a single assignment does not impose any greater or different obligations on the assignee than he himself had incurred. He might have made modifications which, if assented to by the assignee, would have given additional rights to the other party of the contract, such for example as a promise to pay the amount of taxes against him; but as he did not, his obligations are the same as the assignor's.

The counsel for the assignee very properly says that if his client must pay Pakalo Chow his wages during the time he is working out the Government tax, the same rule must apply to contracts made with Hawaiians or any other employees. It may be well to refer to the general mode under the law in which the taxes against the laborers on the plantations are collected. The owner or agent of the plantation pays the tax, and it is made a charge against the person taxed, in payment, to that extent, of his wages; and hence it is very illogical for the counsel to say it was a subterfuge for the Government, after assigning these contracts, to take twenty days of labor per annum for this purpose. The planter does not pay it in this case any more than in the case of the Hawaiian, or any other employees. All of them pay their own taxes ultimately, although the planters may make the advance. The counsel might with as much legal propriety ask the Court to equalize generally the school and road tax, which the law has fixed, as to ask them to remit this tax. It is undoubtedly true that our system of taxation does in these particulars operate unequally; but it is for the Legislature and not the Court to apply the proper remedy.

The counsel assume another somewhat singular position—that if. the laborer is compelled to pay his taxes by labor, he thereby breaks his contract. All contracts are made with reference to the laws of the kingdom, and are subservient to them. The counsel would have the law yield to the contract instead of controlling it, which is, fortunately, against the universal rule.

The decision of the Court is, that Pakalo Chow is legally liable to the tax, and therefore award against him the sum of five dollars, for which judgment will be entered ; and that the assignee of the contract, Lewers, is not liable.

In view of all the circumstances of the case, the Court order that no costs be imposed upon either party.

Attorney General Phillips for H. M. Minister of Finance.

Mr. Montgomery for Pakalo Chow.

Mr. Judd for C. H. Lewers.

Honolulu, March 6th, 1867.